WHEAT v. DINGLE.

Where lien creditors of an intestate receive part payments, after his death, from the proceeds of the property mortgaged and pledged, they are entitled to dividends along with the unsecured creditors out of the general assets, but only upon the amount of their demands remaining unpaid after such application, and not upon the amount due at the date of intestate's death.

Before PRESSLEY, J., Charleston, July, 1889.

This was a controversy without action between Margaret B. Wheat, Paragon B. & L. Association, B. F. Simmons, and H. M. Harmon, executrix, plaintiffs, and G. W. Dingle, as administrator of estate of G. J. Luhn, defendant, submitted June 3, 1889. The case agreed upon was as follows :

The said Margaret B. Wheat claims to recover of G. W. Dingle, as administrator of G. J. Luhn, a dividend upon $16,082.93, and the said administrator resists said claim, but is willing to pay her a dividend upon $6,082.93.

The said Paragon Building and Loan Association claims to recover of G. W. Dingle, as administrator as aforesaid, a dividend upon $11,237 62–100, which claim said administrator resists, but is willing to pay a dividend upon $5,317.76.

The said B. F. Simmons claims to recover of G. W. Dingle, as administrator as aforesaid, a dividend upon $8,284.40, which claim said administrator resists, but is willing to pay him a dividend upon $6,014.00.

The said H. M. Harmon, executrix of Eleazer Harmon, claims to recover of G. W. Dingle, as administrator as aforesaid, a dividend upon $13,363 47–100, which claim said administrator resists, but is willing to pay her a dividend upon $5,985.26.

The following are the facts upon which the said controversy depends :

1st. The said Margaret B. Wheat is a creditor of the said G. J. Luhn, upon a claim which, at the time of his death, with interest to the 1st June, 1889, amounted to the said sum of $16,082.93, upon which a dividend is claimed.

2nd. For this claim she held as collateral security a policy of insurance effected by the said G. J. Luhn in his own name upon his own life, and which he assigned in his life-time to his said creditor to secure said debt. Mrs. Wheat, since his death, has realized $10,000 from this security and applied the same towards her claim.

3rd. The administrator of G. J. Luhn has in his hands a large amount, the proceeds of assets for distribution, and is willing to pay the proper dividend upon $6,082.93, being the deficiency upon Mrs. Wheat's claim after the application thereto of the proceeds of the security as aforesaid, but the said Mrs. Wheat claims she is entitled to a proper dividend upon the entire amount of the indebtedness as it stood at the time of the death of the said G. J. Luhn, together with the interest thereon up to the time of distribution, regardless of what was realized upon the security.

4th. If the said claim by Mrs. Wheat is well founded and distribution be made accordingly, she will not receive from all sources more than the amount of the debt to her by G. J. Luhn.

5th. The other parties named as plaintiffs in this controversy, are each and all bond creditors of said G. J. Luhn, who held mortgages given by him upon his real estate to secure his respective bonds to them.

6th. The said administrator filed his complaint against the heirs of G. J. Luhn for a sale of his real estate, in aid of personal assets in an action to which all the mortgagees were parties. In this action they set up their mortgages, the real estate was sold by order of the court, and the proceeds applied to said liens, according to their priorities. No one of the said bonds was paid in full from the proceeds of the sale of the mortgaged premises applicable thereto.

In the case of the Paragon Building and Loan Association the deficiency was    $5,317 76

In the case of B. F. Simmons the deficiency was     $6,014 00

In the case of H. M. Harmon, executrix, deficiency

    was     $5,985 20

7th. The said administrator has in his hands a large amount of the proceeds of personal assets for distribution, and is willing to pay the proper dividends upon said deficiencies, but the said creditors claim that they are each entitled to a proper dividend upon the entire amount of the indebtedness as it stood at the time of the death of the said G. J. Luhn, together with interest thereon up to the time of distribution, regardless of what was realized from the mortgage of each respectively.

8th. If the said position of the creditors be correct, and distribution be made accordingly, no one of them will receive from all sources more than the total of the said indebtedness to each by G. J. Luhn.

The questions submitted to the court upon this are as follows :

Are the aforesaid creditors, or any of them, entitled to a dividend from the said administrator upon the aforesaid respective deficiencies only ? Or, are they, or any of them, entitled to a dividend upon their entire indebtedness to each as it stood at the time of the death of said G. J. Luhn, with interest up to the time of distribution ?

And the administrator is to be directed by the court according to its termination of the same.

It is further agreed as a part of this case, that in the case of G. W. Dingle, administrator, *v.* H. M. Harmon, executrix, *et al.*, to which all the mortgagees were parties, which said case was for the sale of the real estate, and did not concern the personalty, an order was made that if the proceeds of the sale of the mortgaged property were insufficient to pay the several amounts reported due to the respective mortgagees, with interest and costs, as aforesaid, that the master specify the amount of said deficiencies respectively in his report of sales; and that the parties respectively entitled to such amounts so deficient, have leave to enter up judgment therefor against the administrator, the same to be paid according to the priorities of the respective debts upon which they are granted, out of the assets of the estate of said in-

testate which may be applicable thereto, either in the hands of the master or of the said administrator.

The questions came on to be heard by consent before his honor, Judge Pressley, who decreed as follows :

This being a case stated, I need not repeat the facts. The claim of plaintiffs is without precedent in this State, or in any other of the United States, in so far as my search has gone. My experience at this bar and on the bench is more than fifty years, and in all that time I have not known nor heard of a like claim. All the cases in the same line, from *Tenant's Case*, in 1 Rich. Eq., down to the last case in Estate of Melton, claimed that the balance due on mortgage, after applying the mortgaged property, should rank as a mortgage debt against the assets in the hands of the executor or administrator. That claim was settled otherwise, and yet in not one of those cases was there any claim set up for proving the whole bonded debt against the general assets, without first giving credit for the amount received from the mortgaged property. In *Tenant v. Stoney*, Chancellor David Johnson ruled in Circuit that the mortgage balance could only prorate as a simple contract debt, because that was the character of the debt which had been secured by the bond and mortgage. In this he was reversed by the Appeal Court, which decided that the simple contract debt had been merged in the bond, but that court did not reverse him on the *prorate question of the balance*, and though its decision be not express on that point, yet the inference is clear from that, and all the other mortgage cases, that only the balance of the bond was allowed to be proved against the general assets.

In the case of *Morton & Courteny* v. *Caldwell* (3 Strob, Eq., 166), Chancellor Johnston held that the whole debt was provable against the estate of deceased, where part of it after the decease had been paid out of partnership assets, and that is the rule where part has been paid by a surety; but the Chancellor distinctly says that the rule would be different if the payment were made by the personal representatives of the deceased, and the same would follow if paid out of such estate of deceased as would be assets in the hands of his personal representatives.

In reaching this conclusion I disregard the two English cases

on this point.   1st.  Because they oppose each other ; but chiefly because our law, as to land being assets for payment of debts, differs from the law of England as it was when that decision was made.

It is ordered and adjudged, that plaintiffs are entitled to prove only the balance of their respective debts .in prorating with the general creditors out of the remaining assets .

Plaintiffs appealed.

*Mr. J. E. Burke*, for appellants.

*Messrs. Lord & Hyde*, contra.

April 10, 1890.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was a controversy without action.   (The agreed statement of facts should appear in the report of the case.)   It seems that one G. J. Luhn, being largely indebted by mortgage and otherwise, died intestate, and G. W. Dingle administered upon his estate and took proceedings to sell the real estate in aid of assets.   Upon nearly every parcel of the intestate's real estate there was a mortgage securing a debt. The different mortgage creditors were made parties to these proceedings, and the respective pieces of realty were sold, the proceeds applied to the liens in each case, and the balance left unpaid, for which balance the parties were, by decree, entitled to enter up judgment against the administrator, to be paid out of the assets of the estate which may be applicable thereto.   All the appellants, creditors of the intestate, save Mrs. Wheat, were mortgage creditors, in the condition above stated; and Mrs. Wheat had as security a policy of insurance upon the life of the intestate, assigned to her in his life time ; and that being realized upon, and after his death left a balance still due her upon simple contract.   She had no part in the proceedings to sell the lands. All the appellants claim that they are entitled, there being a deficiency of personal assets, to a proportion thereof, based upon the amounts of their respective debts as they existed at the death of the intestate, and before the securities (mortgages) had been

applied thereto, always providing that in no event more than the debt be paid. The administrator contests this view, and claims that they are only entitled to prove for the deficiency which may remain after exhausting their respective securities.

The facts were submitted to Judge Pressley, who held and "adjudged that the plaintiffs, creditors, are entitled to prove only the balance of their respective debts in prorating with the general creditors out of the remaining assets." The plaintiffs appeal upon the ground that his honor erred in holding that the plaintiffs were entitled to prove only the balance of their respective debts in prorating with the general creditors out of their remaining assets, but, on the contrary, should have adjudged that, in accordance with the rule of law in this State, they, and each of them, were entitled to prove for the full amount of their respective debts as they existed at the death of the intestate, provided only that in no event should the entire amount obtained by any creditors out of the estate exceed the debt as it stood at the time of such death," &c.

In the ground of appeal, as in the argument, reference was made to "a rule of law as established in this State," which, if adhered to, must be considered as conclusive of this case; and in that connection were cited the cases of *Morton & Courteny* v. *Caldwell*, 3 Strob. Eq , 166, and of *Wilson* v. *McConnell's Adm'rs*, 9 Rich. Eq., 500. We have examined these cases carefully, and we fail to find their supposed analogy to this case. In both those cases the debts were divided into two distinct parts as against the partnership and an individual member of the partnership, and it was held that, "in ascertaining the *pro rata* due a copartnership creditor from the separate estate of a deceased copartner, who died insolvent, the debt should be regarded as standing in the precise condition in which it stood at the death of the copartner, without regard to any subsequent payments derived from the copartnership assets, though, to avoid double satisfaction, such creditor is not entitled to receive more than the balance due after deducting such payments," &c. This was manifestly on the ground that the payments by the parnership assets were by a person other than the individual debtor.

As was stated by Chancellor Johnston in *Morton & Courteny*

*v. Caldwell, supra:* "It would appear from all these views that the proper mode for determining the proportions of assets liable to the respective creditors of a deceased debtor, is to assign them according to the debts as they exist at his death. If, upon any of the demands thus taken into consideration, *any payments had been subsequently made by a third party*, that does not release the proportion of the deceased's assets originally liable to the creditor if there still remains due on the demand a balance requiring that proportion to satisfy it." This seems to us, considering the facts, as strictly correct; but suppose that the payments referred to, instead of having been made by *a third party*, had been made out of *the estate proper* of the debtor himself. Would it be for a moment contended that such payments did not release that much of the deceased's assets originally liable to the creditor? It seems to us that such result would not only be in violation of all principle, but entirely unjust.

As we understand it, the cases above cited did not involve the precise point now under consideration, which, as far as we are able to see, is now for the first time raised in this State. Here there is no pretence of allegation that any one is liable for those debts, or any part of them, except the estate of the intestate himself. All are creditors of his estate alone. Some have mortgages upon particular parcels of land, while others have none, but there is no doubt that the whole of the debtor's estate, real and personal, mortgaged and not mortgaged, is liable for his debts; and it does seem to us that, when any part of his debts is paid by the sale of lands belonging to the estate, that cannot, in any proper sense, be called a payment by a third party, as the payment by the partnership in *Morton & Courteny* v. *Caldwell, supra.*

Besides, it is settled in this State that a mortgage has priority over specialty and simple contract debts only to the extent of the property mortgaged. *Piester* v. *Piester,* 22 S. C., 146. After the property mortgaged has been sold and applied to the debt, leaving a balance of the debt unpaid, as to that balance the creditor is no longer a mortgage creditor, but stands only where his evidence of indebtedness places him; and he gets judgment for the balance alone on his claims, whatever it may be, from

which has already been eliminated what was a mortgage debt. In this controversy without action the case states that "the administrator filed his complaint against the heirs of G. J. Luhn for a sale of his real estate in aid of personal assets in an action to which all the mortgagees were parties. In this action they set up their mortgages. The real estate was sold by order of the court, and the proceeds applied to said liens according to their priorities," &c. So that the respective mortgagees, in effect, assented to that application ; and it is, therefore, now too late to present their whole bonds, withholding their mortgages, as suggested by Lord Cottenham in the English case cited of *Mason* v. *Bogg*, 2 Myl. & Cr., 447.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.