STATE OF NEBRASKA v. NEBRASKA SAVINGS BANK.

FILED MAY 2, 1894.   No. 6336.

1. **Insolvent State Banks:** CLAIMS OF CREDITORS HOLDING COLLATERAL SECURITY: DIVIDENDS: RECEIVERS. Where a receiver has been appointed for an insolvent bank in proceedings under the state banking law, on application by certain creditors holding collateral security for the payment of their claims, to be allowed to make proof of their claims before the receiver and to share in dividends declared from the general assets of the insolvent bank, *held*, that all sums collected upon the securities must be deducted from the original amount of the claims and proof may be made for the balance, and that any sums derived from the collaterals or security, during the intervening time between any dividends, shall be deducted from the amount of the claim as it existed at the date of the dividend declared immediately prior to such interval, and in the succeeding dividend the claim be represented in the amount of its balance in the total amount taken, as a basis for declaring such dividend, and this rule is to apply in each and every instance of declaring dividends.

2. ——: ——: ——: ——.  *Held, further,* That the creditor will be required to deliver the securities to the receiver as a condition precedent to being allowed to make proof of his claim as aforesaid; such securities to be collected by the receiver, or disposed of by him in such manner as may be ordered by the court for the benefit of such creditor, the proceeds to be paid to the creditor on his claim, after deducting therefrom all expenses incurred by the receiver in handling, collecting, or disposing of the securities.

ORIGINAL action to wind up the affairs of the Nebraska Savings Bank, of Lincoln, Nebraska, under the banking law of 1889.

The First National Bank of Lincoln, Nebraska, and others, filed in this case in the supreme court a petition for an order upon the receiver of the Nebraska Savings Bank to allow the amount due upon certain notes as claims against the latter.  The petitioners held collateral security for the payment of the notes, but alleged it was insufficient.  The receiver demurred to the petition.  The petition and demurrer are set out in the opinion.  *Demurrer overruled.*

*G. M. Lambertson* and *John H. Ames,* for petitioners.

*George H. Hastings, Attorney General,* and *Field & Holmes,* for receiver.

HARRISON, J.

On the 24th day of March, of the current year a petition was filed in this court by certain of the creditors of the Nebraska Savings Bank, and as it fully explains its purpose, we will copy it in full and allow it to speaks for itself. It reads as follows:

"Now comes the First National Bank, the American Exchange National Bank, the Columbia National Bank, the German National Bank, all organized and incorporated under the national banking act of the United States and

engaged in a general banking business in the city of Lincoln, Nebraska, and the Lincoln Savings Bank, the Union Savings Bank, the Industrial Savings Bank, and the Merchants Bank, all duly organized and incorporated under the laws of the state of Nebraska, and engaged in the business of banking in the city of Lincoln, Nebraska, and by leave of the court file their petition, and for their cause of action say:

"1. That the Nebraska Savings Bank is, and was at all times mentioned herein, a corporation organized and incorporated under the laws of the state of Nebraska and doing a general banking business in the city of Lincoln, Nebraska.

"2. That prior to the 11th day of May, 1893, the said Nebraska Savings Bank was a going concern, but on or about said date a run was made on said bank by the depositors of the bank, and the said bank was in great danger of having its doors closed by lack of sufficient funds to meet said run, and by the depositors demanding money deposited by them in said bank; that said Nebraska Savings Bank, without the aid and assistance of the other banks in the city of Lincoln, would have been unable to stop the run on the above named bank and the demands upon it, and in its distress and peril it called upon the above named banks of the city of Lincoln for assistance, and on or about the 11th day of May, 1893, the said banks agreed to come to the aid and assistance of the said Nebraska Savings Bank, and on or about said last named date said banks advanced and made a loan to said Nebraska Savings Bank, of the sum total of $50,000, part of which was paid, so that on the 1st day of July, 1893, there was due your petitioners the sum of $47,922.13, in the respective amounts as follows:

American Exchange National Bank..............$6,702 54
Columbia National Bank............................ 6,702 54
German National Bank.............................. 6,697 28
First National Bank.................................. 6,702 39
Union Savings Bank................................. 6,702 38

Merchants Bank..................................$3,028 22
Lincoln Savings Bank.............................. 5,701 06
Industrial Savings Bank........................... 5,685 72

"For the said sums advanced respectively by the above named and enumerated banks the said Nebraska Savings Bank on the 1st of July, 1893, executed and delivered to the said banks promissory notes, whereby the said Nebraska Savings Bank agreed to pay on the 1st day of January, 1894, to each of said banks one-half of the amount advanced by said bank, and the balance, or remaining half, was made payable on or about the 1st of July, 1894. Separate notes were given to each bank for the amount of money advanced by said bank.

" 3. For the purpose of securing the payment of said several sums of money advanced by the said banks respectively, and evidenced by the said promissory notes executed to each of said banks by the Nebraska Savings Bank, the said Nebraska Savings Bank, after having been duly authorized thereto by resolution of the board of directors, transferred, assigned, and made over to Richard Miller, cashier of the said Lincoln Savings Bank, in trust for each and all of said banks, notes, bills receivable, and other assets and collateral of the face value of $55,279.48, of which amount the sum of $9,158.58 has been collected and applied *pro rata* upon the said notes, leaving a balance of $41,536.38 due to all of said banks, which indebtedness is proportioned to the several banks according to the amount of the sums advanced by each of said banks to the said Nebraska Savings Bank.

" 4. Your petitioners allege that the collateral in their hands is insufficient to pay in full and satisfy the said notes, and your petitioners have no other assets of said bank, or any other way or means by which they can satisfy and secure the payment of the said notes and the said sums of money advanced by the said banks as aforesaid, except they are permitted to share in the assets and participate in

the dividends to be paid by the receiver of said bank. Your petitioners have offered to surrender to the receiver the whole of their security and collateral if the receiver will pay ninety per cent of your petitioners' claim, which offer the receiver has declined.

"5. Your petitioners further allege that on or about the 12th day of July, 1893, the said Nebraska Savings Bank closed its doors, and, being then insolvent, was proceeding to wind up its business under the supervision of the state banking board; that on an application made to this court on the 17th day of July one Charles H. Morrill was appointed receiver of the said Nebraska Savings Bank, and on or about the 17th day of July the said Charles H. Morrill entered upon his duties as the receiver of said bank and took possession of all of its assets and proceeded to administer the estate of said bank and wind up its business affairs pursuant to law and under the direction of the said court.

"6. Your petitioners further allege that the said Charles H. Morrill, receiver of the said Nebraska Savings Bank, has in his possession a large amount of assets of the said bank, upon which and from which and out of which a dividend to the creditors of the said Nebraska Savings Bank will be paid.

"7. Your petitioners further allege that the said notes, hereinbefore mentioned and described, were duly presented by the said banks, respectively, to the said Charles H. Morrill, as receiver of the said Nebraska Savings Bank, as a claim against said bank, and the said Charles H. Morrill, as such receiver, was duly requested by your petitioners to allow said notes as a claim against said bank and in favor of the said respective banks for the amount of the said separate notes; and in this behalf your petitioners further allege that the said Charles H. Morrill refused, and still refuses, and does now refuse, to allow said notes, or either of them, as a claim against said bank, and is about to dis-

allow the same as such receiver, unless otherwise ordered and directed by this court.

"8. Your petitioners allege that at the time of the failure of said bank there was due to each of said banks the said sums of money as alleged to have been advanced by the said banks, and interest on the same from the 1st day of July, 1893, making a sum total of $47,922.13 and interest from the 1st day of July, 1893, due to all of said banks; and there was due at the date of the last report made to the said trustee, Richard Miller, by the receiver of said bank, bearing date March 13, 1894, $41,556.38.

"Your petitioners therefore pray that the said receiver, Charles H. Morrill, of the said Nebraska Savings Bank, be ordered and required to allow the claims of the said several banks, for the amounts due from the said Nebraska Savings Bank to each of said banks upon said promissory notes at the time the receiver entered upon his trust and took possession of the assets of said bank, and that he be further ordered and required to pay these petitioners, upon the said sums due at the date of his appointment, *pro rata* to that paid and to be paid to the other creditors of the said Nebraska Savings Bank; and your petitioners also pray for such other and further relief as the circumstances in the case may require."

To the petition the following demurrer was filed:

"In the matter of the claims presented by the First National Bank, the American Exchange National Bank, the Columbia National Bank, the German National Bank, the Lincoln Savings Bank, the Union Savings Bank, the Industrial Savings Bank, and the Merchants Bank v. the defendant, the Nebraska Savings Bank, asking for an order on C. H. Morrill, the receiver, the object and purpose of which said order is to require the said receiver to allow the said claim presented by the above named banks and filed with the receiver, the said receiver comes now, and does hereby demur to the petition of the said above named

plaintiffs or petitioners, for the reason that the same does not state facts sufficient to justify this honorable court in issuing an order to, and directing, the said receiver to allow said claims filed by the above named banks, and permit them to participate in dividends that may be hereafter declared."

And on the issues of law thus raised the matter was argued and submitted to the court for decision. That the petitioners made the loan to the Nebraska Savings Bank, and all other facts well pleaded, are, of course, admitted by the demurrer, and it is fully established that the savings bank was and is indebted to the banks presenting the petition, and in the sums set forth therein, and that the collateral notes and securities, stated in the pleadings, were delivered to the banks making this application and are now held by them.

The questions to be decided may be thus stated: Are these plaintiffs, the banks, entitled to prove their claims against the general assets of the savings banks? And if so, in what amount, for the whole original sum of the loans and interest, or must they deduct any and all sums collected of the collaterals, and prove their claims for the balance, and should a similar deduction be made before each dividend declared by the receiver, each bank to receive, at each time the dividend is declared, only such amount as the balance remaining due it after such deduction entitles it? And if they are entitled to share in the general assets, should they be required, as a condition precedent thereto, to deliver the collaterals held by them to the receiver, to be by him collected, or disposed of, should the court so order, for the benefit of these banks, and applied on their claim until it is extinguished or fully paid?

In dealing with insolvent estates, and in assignment proceedings, the courts, where the necessity has arisen for a rule on points similar to the ones involved in this case, have established and ordered to be followed such a course of pro-

cedure as seemed most equitable and just. Some adopted the rule which prevailed in bankruptcy, viz.: If any creditor, who held security for the payment of his claim, desired to be allowed the full amount of the claim and share accordingly in the assets, he was required to deliver his security to the assignee in bankruptcy, or, at his option, have his security valued, and deduct the value from his claim and prove for the balance. Another rule required that all sums collected from the collaterals be deducted and proof made for the balance of the claim, and immediately before or at the time of each dividend all sums derived from the collaterals between the date of proof and the date of such dividend be deducted from the claim and the creditor draw dividends according to the balance; and another has been formulated allowing the party holding security to prove his claim for the full amount, as does any other creditor, secured or unsecured, and to draw dividends on the full amount of his claim, and to apply these sums and all sums collected from the security to the payment of his claim until the same is fully paid, or the general assets and also his security exhausted, if insufficient or just sufficient to meet the claim.

There has been no case decided in this court of a similar nature to the one now before us, hence we are at liberty to adopt any course which appears most agreeable to the principles of equity, good conscience, and fair judgment, and consonant with the best reason. The bankruptcy rule has been adopted, or practically so, by the courts of last resort of the following states: Iowa, Massachusetts, South Carolina, and Washington. This rule had its origin in statutory enactment (not now in force) and was dependent for its fairness or applicability upon the wisdom of the framer of the law and the individual members of the legislative body enacting it, and was devised for special proceedings, and has no binding power or effect, except that it has been adopted after due consideration by the above

courts (all of them recognized as being among the best authorities in our nation) as the most equitable and true one, and we fully concur in the reasoning and argument which lead to this conclusion, but not with the rule deduced from it and formulated to enforce the rights of parties in accordance with the conclusion. We think it is unfair to the creditor to require him to surrender his security entirely and derive no benefit therefrom, or to submit to have it appraised and accept the value placed upon it as a payment upon his claim. There certainly is, and can be ascertained, a more equitable plan of adjusting the difficulty than this.

We will next notice the third rule above stated. We are thoroughly convinced that this rule is objectionable, as being inequitable and unfair when viewed in its relation to the claims of unsecured creditors, and its effects in withdrawing from the general assets of the insolvent debtor, in this case the bank, portions of such assets as dividends on the full amount of the secured claims and paying them thereon, at the same time allowing the secured creditor to collect the security or securities and also apply the proceeds to the payment of the claim, thus diminishing the fund to which the unsecured creditor is entitled for the payment of his claim, in favor of the secured creditor, beyond the limits and demands of justice and fairness to him or his claim, or the true enforcement of the contract entered into when the debt was created which is the basis of his claim. The secured creditor would obtain an advantage over the unsecured one, to which no rule of law or equity entitles him, and which cannot be accorded him without working injustice to the other parties. Such is not the province or duty of the courts and cannot prevail. A very forcible illustration of the application of the doctrine under consideration and the undue advantage effected by it in favor of the creditor holding security, is given in *Re Frasch*, 5 Wash., 344, 31 Pac. Rep., 756, which we will copy here with some of the comments thereon, as both the illustration and

comments are so entirely applicable and pertinent to the discussion here. They are as follows:

"A assigns his estate, worth $15,000, including security in the hands of B, worth $5,000. B has a claim against the estate of $5,000, secured as mentioned above, and an unsecured claim of $5,000. C has an unsecured claim of $10,-000. Deducting the securities from the assets, the estate has $10,000 with which to pay claims aggregating $20,000, and as a consequence pays fifty cents on the dollar. B is allowed a *pro rata* on his whole claim of $10,000, which gives him $5,000. He then makes the other $5,000 out of the security, and in consequence has his whole debt paid in full. Thus on his unsecured debt of $5,000 he receives $5,000, while C on his unsecured debt receives only $2,500. It is not difficult to see that, by some species of legerdemain in logic, B has not only had the full benefit of his security, but that the security has reached beyond its legitimate purpose and original intention, and given him an undue advantage of an unsecured creditor with whom he stood on equal footing so far as their unsecured claims were concerned. In fact it has placed him in a different and more favorable position than he would have been if his secured debt had been paid in full immediately prior to the assignment. Abstract theory should not be allowed to refute practical example, and it cannot be gainsaid that the practical effect of holding in favor of appellant's contention is as demonstrated above, which must be admitted to be an inequitable effect."

From the above considerations we conclude that we cannot follow the plan announced in the third rule, although supported by the weight of authority, if such weight consists in the number of cases decided, the number of judges reasoning in the same line and concurring in the conclusions reached, or the number of states following and approving the same doctrine. The third rule has been adopted in United States courts, and in the state courts of New York,

Illinois, Connecticut, Kentucky, North Carolina, Oregon, Pennsylvania, Rhode Island, Michigan, Vermont, Tennessee, and New Hampshire.

We will next examine the second rule hereinbefore set forth, and this, to our minds, contains the truest and most satisfactory solution of the problem of the adjustment of the rights of the different creditors involved in this case or any similar case. On the main contention as to whether the secured creditor is to retain the securities and realize therefrom and apply the same on the debt, and at the same time prove for the full amount of his claim before the receiver as a basis for declaring dividends to be applied in payment of his claim, the reasoning of the courts of Iowa, Massachusetts, South Carolina, and Washington is identical with that of the court of Maryland, the only court which has announced the rule we are now considering. All of them agree in the answer to the main question involved, and only separate when they reach the point where it is necessary to formulate and adopt a rule founded upon such conclusions, all except the last named state selecting the rule in bankruptcy proceedings. In the consideration here it must be borne in mind that the main reason alleged in the petition in this case for the relief demanded is the fact that the collaterals are, or will be, insufficient to fully meet or pay the claim of the secured creditors. Paragraph 4 of the petition states, among other things, as follows: "Your petitioners allege that the collateral in their hands is insufficient to pay in full and satisfy the said notes, and your petitioners have no other assets of said bank, or any other way or means by which they can satisfy and secure a payment of the said notes, and the said sums of money advanced by the said banks as aforesaid, except they are permitted to share in the said assets and participate in the dividends to be paid by the receiver of said bank."

In *Armory v. Francis*, 16 Mass., 308, it was held: "If a creditor to an insolvent estate have a mortgage, as secur-

ity for his debt, of less value than the amount of the debt, he can claim from the commissioners only for the differ- ence between his debt and the value of the property mort- gaged," and Parker, C. J., in the text of the opinion says, in speaking of the security, and the rule adopted in the case: "For originally it would have been security only for a proportion of the debt equal to its value; whereas by proving the whole debt and holding the pledge for the bal- ance, it becomes security for as much more than its value, as is the dividend which may be received upon the whole debt. This rule was adopted in England on account of its reasonableness, and because consistent with the nature of the contract. For the property pledged is in fact security for no more of the debt than its value will amount to; and for all the rest the creditor relies upon the personal credit of the debtor, in the same manner he would for the whole if no security were taken."

The decisions in the other cases where the bankruptcy rule was approved are founded upon the proposition that "if a creditor has two funds out of which he may make his debt, he may be required to resort to that fund upon which another creditor has no lien;" but, say the au- thorities holding the contrary view, this proposition must be modified by the further statement that it will be the rule "whenever it will not trench upon the rights, or operate to the prejudice of the party entitled to the double fund," and this, it must be conceded, is undoubtedly correct; that it cannot be otherwise needs' not even to be stated. But will any of the vested legal rights of the secured creditors be infringed upon or wrested from them by the adoption of the rule by which there will be deducted from their original claim the sum derived from the collaterals, and only allowing them to prove for the balance in the first instance as a basis for their representation in the declara- tion of dividends by the receiver, and further requiring that prior to declaring any subsequent dividends, and im-

27

mediately before each of such dividends, the amount col-
lected on collaterals during the intervals between such
dividends shall be deducted from the amount of their
then existing claim, and the remainder, or balance, be the
basis for their representation in the then declared divi-
dend?  We do not think so.   By the contractual relation
which was created between the Nebraska Savings Bank
and these creditors when the loan was made by the banks
to the Nebraska Savings Bank and the securities delivered
to them they were empowered to enforce their claim
against two funds, the collaterals and any other property
possessed by the debtor; but if a collection was made from
either, it must have been applied at the time of its collec-
tion, and by so much as was its amount diminished, the
claim afterwards to be enforced against either or both of
the two sources existing and to be resorted to for its extin-
guishment.   If, after a sum realized from the collaterals,
suit was brought to enforce the debt, judgment could only
have been rendered for the amount remaining due after de-
ducting the sum collected.   If default had been made in
payment of the debt prior to anything being collected
on the securities, and an action instituted thereon and
prosecuted to judgment and execution issued and levied on
the property of the bank, any sum realized by such pro-
ceedings must have been applied to reduce the amount of
indebtedness, and thus decrease the charge against the col-
laterals.   This would have been true before the appoint-
ment of the receiver, and he stands in the place of the
debtor, and by his appointment the secured creditors could
not have, and did not secure, any superior rights or equities
to those before possessed by them; nor were the unsecured
creditors, by such appointment, deprived of any rights to
resort to any property belonging to the debtor for the pay-
ment of their claim, nor were they less entitled to have
the secured creditors apply sums coming from the securi-
ties to the extinguishment of their claim; nor were any

new privileges conferred upon the secured creditors, by which they were entitled to change the manner of collecting their claim, in so far as related to the funds to be resorted to or the extent to which they, or either of them, could be subjected to the payment of their claim. We are satisfied that the second rule, the one which we are discussing at present, is the true one, and that it will, in its practical workings, result in keeping the parties in as near the exact relations they occupied as to enforcement of their claims before the appointment of the receiver, and in greater equity, fairness, equality, and justice as or than can be attained in any other manner, and hence we conclude to adopt it.

What should be done with the collaterals has been variously determined by the courts which agreed on the main rule as to proof of the claim or claims; but we think the best and most equitable disposition that can be made of them is that they be delivered to the receiver, to be by him held and collected, or otherwise disposed of, if the court so orders, and the amount realized in either manner, or both if pursued, to be applied by him to the payment of the debt due the banks until these sums, together with the dividends, result in canceling the indebtedness, or both funds are exhausted; the remainder, if any, then to be and become a part of the general assets and for the benefit of all creditors; the expense of the collection of collaterals to be paid from such collections, and the general assets not be chargeable with such expense, and no expense of collecting other assets to be paid from moneys derived from collaterals; the receiver to be paid such compensation for handling the collaterals as shall be ordered by the court, to be paid from the proceeds of the collaterals. By this we think the collaterals will be more rapidly made, and at less expense, and any possible controversy between the receiver and the creditors holding the securities, in reference to it, or failure to collect or enforce it on their part, will be avoided. We

conclude that the demurrer was not well taken and it is therefore overruled. An order will issue to the receiver of the Nebraska Savings Bank in accordance with the above opinion.

JUDGMENT ACCORDINGLY.