UNION & PLANTERS BANK OF MEMPHIS *v.* BENJAMIN C. DUNCAN.

ASSIGNMENTS FOR BENEFIT OF CREDITORS.    *Secured creditor.    Right to dividend.*

Under a non-preferential assignment for the benefit of creditors, providing for the payment of liabilities ratably, a creditor who holds collateral security for his debt is not entitled to dividends upon the face of his claim without crediting the value of the collaterals.

FROM the chancery court of Grenada county.

HON. JAMES C. LONGSTREET, Chancellor.

The Union & Planters Bank of Memphis, the appellant, was complainant, and Duncan, the appellee, defendant in the

court below.    From a decree in defendant's favor the complainant appealed to the supreme court.

On January 18, 1903, the Merchants Bank of Grenada, Miss., borrowed from the Union & Planters Bank of Memphis, Tenn., $10,000, and gave its note therefor; and, to secure this note, it assigned, as collateral security, a number of promissory notes held by it.   On the 26th of January, 1903, the Merchants Bank of Grenada made a general assignment for the benefit of its creditors to Duncan, as assignee, who qualified as such. The assignment was without preferences, and provided that the estate should be applied toward paying "ratably the just debts and liabilities" of the assignor.   At the April, 1903, term of the chancery court a dividend of 25 per cent was declared, and a commissioner was appointed to audit and report the claims entitled to share in the distribution.   The commissioner made his report, and omitted the claim of the Union & Planters Bank.    This report was accepted, and a decree was renderd ordering a distribution in accordance therewith.    The Union & Planters Bank then filed its petition in the case, asking for allowance of its dividend in the distribution.    The receiver answered the petition, setting up that petitioner should not be allowed to share in the distribution of the estate until it had either surrendered the collaterals held by it or had accounted for their value.    Upon this there was a final decree rendered, providing that petitioner could surrender its collaterals to the receiver, and share in the distribution upon its entire claim, or account for the collaterals by deducting their face value from the debt, and receive dividends upon the difference between their value and the debt due it.    This is the decree reviewed on appeal.

*Horton & Horton,* for appellant.

It is a settled principle of equity that a creditor holding collaterals is not bound to apply them before enforcing his direct

remedies against the debtor. *Lewis* v. *United States,* 92 U. S., 618.

A secured creditor of an insolvent debtor may prove and receive dividends upon the face of his claim, as it stood at the time of the declaration of insolvency, without crediting either the collaterals or collections made therefrom after such declaration. In this case, therefore, appellant is entitled to receive its dividend upon the sum of money due from the bank to it at the date of assignment—to wit, ten thousand dollars—without crediting either the value of the collaterals thereon or surrendering them up to the receiver. This is the rule in equity. *Merrill* v. *National Bank,* 173 U. S., 131; *Aldrich* v. *National Bank,* 176 U. S., 618; *Bank* v. *Haug,* 11 L. R. A., 327; *In re Meyer,* 11 R. L. A., 841; *People* v. *Remington,* 8 L. R. A., 458; *Meacham* v. *Pinson,* 60 Miss., 217; *Apperson* v. *Wilbourn,* 58 Miss., 440; *Levy* v. *Bank,* 30 L. R. A., 380; *Bank* v. *Armstrong,* 28 L. R. A., 231; *In re Miler's Estate,* 22 Am. Rep., 754; *In re Bates,* 59 Am. Rep., 383 (23 Am. & Eng. Ency. Law [2d ed.], 1118; 18 *Id.* [1st ed.], 677; 3 Am. & Eng. Ency. Law [2d ed.], 141; Story's Eq. Jur., secs. 560, 564b, 633; 3 Pom. Eq. Jur., sec. 1414; 84 Am. Dec., 479).

*W. C. McLean,* for appellee.

It is to be presumed, and conclusively presumed, that when the bank used in the deed of assignment the expression "ratably the just debts and liabilities of said party of the first part" it intended thereby to convey such meaning as the courts heretofore had almost universally placed upon such an expression. A critical examination of the opinions of Mr. Justice White in *Merrill* v. *Nat. Bank of Jacksonville,* 173 U. S., 152 *et seq.,* clearly establishes the proposition from the authorities that the universal rule applied in England and in this country in the distribution of insolvent estates has been to construe the word "ratably" to mean that a creditor who has security for his debt is only entitled to receive dividends upon the debt after

exhausting his security. If this be not done, there is no ratable distribution of the assets. See also opinion of Mr. Justice Gray, 173 U. S., 172 *et seq.,* and authorities cited in 173 U. S., 168. Lord Chancellor Eldon, in 1813, in *ex parte* Smith, 2 Rose, 63, said: "The practice has long been established in bankruptcy not to suffer a creditor holding security to prove, unless he will give up that security, or the value has been ascertained by the sale of it. The reason is converse: till his debt has been reduced by the proceeds of that sale it is impossible correctly to say what the actual amount of it is." The authorities *pro* and *con* upon this question will be found cited in footnote to *Merrill* v. *Bank,* 173 U. S., 168, 169. This court in *Davis* v. *Walker,* 51 Miss., 649, and in *Millsaps* v. *Bond,* 64 Miss., 453, enforces the well-recognized rule of equity that "where a creditor has a claim upon two funds, another having a claim to one of them may compel him to first go against that one to which the other has no claim."

Argued orally by *Wm. C. McLean,* for appellee.

Whitfield, C. J., delivered the opinion of the court.

The question in this case is whether the secured creditor of this insolvent bank may prove and receive dividends upon the face of his entire claim—his whole debt—without crediting his collaterals or collections made therefrom and without surrendering the said collaterals. It is a question upon which there is a great conflict in the authorities; but, after the maturest consideration, we prefer the view that such secured creditor is not so entitled, but must credit the value of the collaterals on the debt, and prove only for the balance. In view of the very able and very exhaustive consideration of this subject in the case of *Merrill* v. *Nat. Bank of Jacksonville,* 173 U. S., 131 (19 Sup. Ct., 360; 43 L. ed., 640), we deem it unnecessary to attempt any extended observations of our own. It is impossible for us to escape the conclusion that the better view is set forth

in the opinion of the dissenting justices, delivered by Mr. Justice White, and we adopt the reasoning of that opinion as our own. We make just a few observations: These collaterals passed by the assignment to the assignee. The fact that they were held as collateral to the debt did not change the fact that they were a mere security for the debt. The assignment provides that the distribution shall be ratable amongst the creditors. We think Mr. Justice White demonstrates that "the rule in bankruptcy did not depend upon express statutory requirement, but, on the contrary, that it was simply a necessary outgrowth of the command of the statute that there should be an equal distribution of the bankrupt's assets." As said by Justice White: "True it is that, both in our own act of 1867 and in the English bankrupt act of 1869, there were inserted express provisions requiring a secured creditor to account for his collaterals before proving against the general assets. But this was but the incorporation into the statutes of the rule which had arisen as a consequence of the requirement for a ratable distribution, and which had existed for hundreds of years before the statutes of 1867 and 1869 were adopted. In other words, the express statutory requirement only embodied in the form of a legislative enactment what theretofore from the earliest time had been universally enforced, because of the provision for a ratable distribution." Mr. Justice White further says: "It was undoubtedly from a consideration of this fundamental rule of equity, in construing the statutory requirement for ratable division of general assets, that the bankruptcy rule was formulated. That rule, however, in effect, declared that secured creditors might retain their preferential contract rights in particular portions of the estate of the insolvent debtor, but that it was the purpose of parliament, in commanding ratable distribution, that general assets—that is, assets disincumbered of liens—should be distributed only among the general or unsecured creditors; the necessary effect being that a secured creditor could not prove against general assets with-

out surrendering his security, thus becoming a general or un-secured creditor for the whole amount of the debt, or realizing upon the security, or in some form accounting for its value, in which latter contingency he would be general or unsecured creditor only for the deficiency. That the bankruptcy rule was deemed to be founded upon equitable principles, I think, is demonstrated by the statement of Lord Hardwicke in a case already mentioned (*Broomley* v. *Goodere,* 1 Atk., 77), where, after referring to the act of 13 Elizabeth, ch. 7, he said: 'It is manifest that this act intended to give the commissioners an equitable jurisdiction as well as a legal one, for they have full power and authority to take by their discretions such order and direction as they shall see fit, and this has been the construction ever since; and therefore, when petitions have come before the chancellor, he has always proceeded upon the same rules as he would upon cases coming before him upon the bill—the rules of equity.' " As well said by Lord Chancellor Eldon: "Till his debt has been reduced by the proceeds of that sale [that is, of the security], it is impossible correctly to say what the actual amount of it is."

This assignment expressly directs the distribution to be rata-ble; these collaterals pass *sub modo* by the assignment to the assignee; and, in any proper or just sense, it is impossible to say what the real debt due the secured creditor was until he had sold his collaterals and applied the money in reduction of his debt, and that balance of debt thus remaining constitutes the debt upon which alone he can prove. We add, to approve them, the observations of Chief Justice Parker and of Chief Justice Shaw. The former said in *Amory* v. *Francis,* 16 Mass., 308: "If it were not so, the equality intended to be pro-duced by the bankrupt laws would be grossly violated, and the creditor holding the pledge would in fact have a greater security than that pledge was intended to give him. For originally it would have been security only for a portion of the debt equal to its value; whereas, by proving the whole debt and holding

the pledge for the balance, it becomes security for as much more than its value as is the dividend which may be received upon the whole debt." The latter said in *Farnum* v. *Boutelle,* 13 Metc. (Mass.), 159: "If the mortgage remained in force at the time of the decease of the debtor, then it is very clear, as well upon principle as upon authority, that the creditors cannot prove their debt without first waiving their mortgage, or in some mode applying the amount thereof to the reduction of the debt, and then proving only for the balance."

     *It follows from these views that the decree is affirmed.*

CALHOON, J., dissented.