Syllabus:—Statement of the case.

FRANK MARK,

*vs.*

AMERICAN BRICK MANUFACTURING COMPANY.

*New Castle, Aug.* 3, 1912.

Independent of statute, a court of equity, administering the estate of an insolvent corporation, will allow a creditor holding collateral to prove and receive payment on his full claim, without deducting therefrom the amount obtained from the collateral, provided that in no event he receives more than his full debt from either or both sources.

A mortgagee of an insolvent corporation may share in the proceeds of its unmortgaged property administered in a court of equity based on the full amount of the mortgage debt and interest thereon to the day of sale of the mortgaged property, provided he receives no more than the amount of such debt and interest.

A court of equity, administering the affairs of an insolvent corporation, may require a creditor holding collateral to realize on the collateral, or have it appraised, and the value, or the proceeds thereof, considered in the final settlement with him, so that he may not receive more than the whole amount of his debt from the collateral and the other property of the corporation.

STATEMENT OF THE CASE. The American Brick Manufacturing Company was decreed by the Chancellor to be insolvent, and receivers were appointed to wind up its affairs. The assets of the company turned over to the receivers consisted of real estate and personal property, which was sold by the receivers pursuant to an order of the Chancellor, and a mortgage lien against the real estate was transferred to the proceeds of the sale thereof. At the sale the real estate was offered as one lot and a bid of ten thousand dollars was received therefor, and the personal property was offered in one lot for which a bid of five thousand dollars was received. Both the real estate and personal property were then offered and sold as one lot for about fifteen thousand dollars. The amount bid for the real estate was insufficient to satisfy in full the mort-

gage debt and interest, and the receivers in their final report among other things prayed "that an order be entered apportioning the amount received from the sale of the property between the property subject to the lien of the mortgage as aforesaid, and that not so subject."

*Andrew E. Sanborn*, for the receivers, submitted the matter to the Chancellor without brief or argument, and the mortgagee was not represented by a solicitor.

THE CHANCELLOR. In this case there was a mortgage on real estate to secure bonds. The mortgaged property was offered for sale in one lot and the unmortgaged property in another. Both were sold together as one lot by the receivers, clear of liens, the liens being transferred to the proceeds of sale. The amount bid for the mortgaged property is the fund in the hands of the receivers, to which the mortgage lien attaches. In this case the bid for the mortgaged property was about ten thousand dollars, and that for the unmortgaged property about five thousand dollars, and the whole sold for about fifteen thousand dollars. The lien of the mortgage attaches to the ten thousand dollars, part of the fifteen thousand dollars received by the receivers. As this is insufficient to pay the mortgage debt and interest thereon to the date of the sale, what are the respective rights of the mortgagee and other creditors respecting the balance of the fund?

The costs and expenses of the receivership, including compensation of the receivers, are to be first paid out of the balance. Is the claim of the mortgagee against this latter fund for the balance of the mortgage debt reduced by deducting therefrom ten thousand dollars, or for the full amount of the mortgage debt and interest to the time of the sale of the mortgaged property?

There is no statutory provision in Delaware applicable. The assets of the insolvent company are being administered according to equitable principles for the benefit of its creditors generally. The rule of marshaling of assets which requires a creditor with two funds as security, one of which he shares with others, to exhaust his sole security first, does not apply.

"He was given the two securities to pay his debt, and he cannot be deprived of this primary equity for the benefit of some one else who is less fortunate in his security." 3 *Pomeroy's Equity Jurisprudence* (2d Ed.) §1414; *Story's Equity Jurisprudence* (2d Eng. Ed.)   §564 (*b*).

The established rule in chancery, independent of the influence of bankruptcy statutes and other legislation, is that a creditor with collateral shall have the right to prove and receive payment on his full claim against an insolvent estate administered in a court of equity, without deducting from such claim the amount collected by him from his collateral, provided, of course, that in no event shall such secured creditor receive more than his full debt from either or both sources. *Mason v. Bogg*, 2 *Myl. & Cr.* 443; *Kellock's Case, L. R. 3 Ch.* 768; *Lewis, Trustee, v. U. S.*, 92 *U. S.* 618; *Chemical Bank v. Armstrong*, 59 *Fed.* 372, *Merrill v. National Bank of Jacksonville*, 173 *U. S.* 131.   There are other cases cited and referred to in *Merrill v. Bank, supra*, and it is not necessary either to review or cite them here.

In *Kellock's Case*, Lord Justice W. Page Wood, soon afterwards Lord Chancellor Hatherly, said:

"Now in the case of proceedings with reference to the administration of the estates of deceased persons, Lord Cottenham put the point very clearly, and said: 'A mortgagee has a double security. He has a right to proceed against both, and to make the best he can of both. Why he should be deprived of this right because the debtor dies, and dies insolvent, it is not very easy to see.' Mr. De Gex, who argued this case very ably, says that the whole case is altered by the insolvency. But where do we find such a rule established, and on what principle can such a rule be founded, as that where a mortgagor is insolvent the contract between him and his mortgagee is to be treated as altered in a way prejudicial to the mortgagee, and that the mortgagee is bound to realize his security before proceeding with his personal demand.

"It was strongly pressed upon us, and the argument succeeded before Sir J. Leach in *Greenwood v. Taylor*, 1 *Russ. & My.* 185, that the practice in bankruptcy furnishes a precedent which ought to be followed. But the answer to that is, that this court is not to depart from its own established practice, and vary the nature of the contract between mortgagor and mortgagee by analogy to a rule which has been adopted by a court having a peculiar jurisdiction, established for administering the property of traders to meet their engagements, which property that court found it proper and

right to distribute in a particular manner, different from the mode in which it would have been dealt with in the Court of Chancery. * * * " * * * We are asked to alter the contract between the parties by depriving the secured creditor of one of his remedies, namely, the right of standing upon his securities until they are redeemed."

In the opinion of the court and in the two dissenting opinions in *Merrill v. National Bank of Jacksonville, supra*, there is such a full discussion of the principles and precedents on both sides that a full citation of the opposing views and discussion is not necessary here. The basis of the equity rule is thus stated in *Merrill v. National Bank of Jacksonville, supra*:

"The fourth rule is that ordinarily laid down by the chancery courts, to the effect that, as the trust created by the transfer of the assets by operation of law or otherwise is a trust for all creditors, no creditor can equitably be compelled to surrender any other vested right he has in the assets of his debtor in order to obtain his vested right under the trust. It is true that in equity, a creditor having a lien upon two funds may be required to exhaust one of them in aid of creditors who can only resort to the other, but this will not be done when it trenches on the rights or operates to the prejudice of the party entitled to the double fund. *Story Eq. Jur.* (13th Ed.) § 633; *In re Bates*, 118 *Ill.* 524 [9 *N. E.* 257, 59 *Am. Rep.* 383]. And it is well established that in marshalling assets, as respects creditors no part of his security can be taken from a secured creditor, until he is completely satisfied. *Leading Cases in Equity, White & Tudor, vol.* 2, *part* 1 (4th Am. Ed.) *pp.* 258, 322."

Judge Taft, in *Chemical National Bank v. Armstrong, supra*, says it is a fundamental error to say that the claim of a creditor of an insolvent estate in reference to the sequestered assets of the debtor and the debt against the debtor are and continue to be one and the same thing. Saying also:

"The amount of the claim as proven is a measure of the creditor's right and interest in the fund realized from the assets. The claim as proven is a claim *in rem* and not *in personam*."

The secured creditor is not to be cut off from his right in the common funds because he has taken security which his co-creditors have not. He has a right to collect his whole debt from the property of the debtor by suit, judgment and execu-

tion, as well as a right to look to his collateral. By the interposition of the court in taking possession of the assets of the debtor company, to administer it for all creditors and for the stockholders, he, like all other creditors, is halted in his general right to so collect. It is inequitable to so limit his right without otherwise giving him the full benefit of it. With all his co-creditors he shares in participating in the distribution of the insolvent estate in addition to his peculiar and separate right to obtain payment from the collateral which by his diligence and pursuant to his agreement with his debtor, he has obtained as one of the terms under which he became a creditor.

The foundation for the rule here adopted is satisfactory and as this court is uncontrolled by bankruptcy statutes, or other legislation, that is the rule to be adhered to.

The mortgagee will, therefore, be allowed to share in the proceeds of the unmortgaged property, based on the full amount of his mortgage debt and interest thereon to the day of sale of the mortgaged property; provided, of course, he receives no more than the full amount of such debt and interest, which he surely will not do in this case, where the total assets are entirely insufficient to pay all the debts of the insolvent company.

It is not intended hereby to hold that a court of equity administering the affairs of an insolvent corporation has no control over the collateral held by a creditor of the company and cannot in some way secure for the insolvent estate the benefit of the collateral as an asset of the company, while at the same time it protects the right of the holder of the collateral to the benefit thereof also. This may be done by requiring the creditor to realize on the collateral, or have it appraised and the value or proceeds thereof considered in the final settlement with such creditor, so that it will always be certain to the court that such secured creditor receives no more than the whole amount of his debt from the two sources of payment. But the methods of reaching these results need not here be considered.