(128 So. 394)

**FIRST NAT. BANK OF BIRMINGHAM v. GREEN, Superintendent of Banks.**

7 Div. 949.

Supreme Court of Alabama.

May 15, 1930.

Cabaniss, Johnston, Cocke & Cabaniss and L. D. Gardner, Jr., all of Birmingham, for appellant.

W. T. Starnes, of Pell City, for appellee.

BOULDIN, J.

This proceeding is to determine the equitable rule of distribution of the assets of an insolvent state bank, as between secured and unsecured creditors.

Pell City Bank & Trust Company being in the course of liquidation through the State Superintendent of Banks, the First National Bank of Birmingham presented its claim against such insolvent bank with proof thereof. Code, § 6310.

To raise the question now for decision, the First National Bank set forth in its proof the amount of its loans to the insolvent bank, and the amount of collaterals held as security therefor; and made claim for dividends as hereinafter shown.

The state superintendent of banks, by letter of advice, expressed doubt as to the right to receive dividends on the full amount of the debt as claimed, and rejected the claim that a definite adjudication may be had through the courts. Code, § 6311.

Thereupon the claimant proceeded by petition in the circuit court praying an order directing the allowance of the claim as presented. Code, § 6312.

The circuit court denied relief, and petitioner appeals. Jackson v. Whitsell, 213 Ala. 369, 104 So. 662.

The rule insisted upon by appellant is clearly set forth in proof of its claim in these words: "Said The First National Bank of Birmingham files its claim against the said Pell City Bank and Trust Company for the full amount of said indebtedness in the sum of Fifteen Thousand Five hundred dollars ($15,500) claiming the right to share in dividends to be paid in liquidation of the affairs of said Pell City Bank and Trust Company on the full amount of its claim without deduction or off-set on account of collateral held by it, claiming the right and privilege of receiving such dividends on the full amount of its claim, and in addition thereto of receiving on account of its debts proceeds of such collateral as may be realized on until the full

202

amount of claimant's debt had been paid, following which claimant admits that it is liable to make delivery to the Superintendent of Banks of the State of Alabama, liquidating the affairs of said Pell City Bank and Trust Company of the balance of the collateral remaining in its hands or of any excess amount which it may have received from said dividends and or collateral over and above the full amount of its claim including any interest which may hereafter accrue on claimant's said debt."

Appellant has given us the aid of a full and carefully prepared brief, disclosing the conflicting rules applied in the several states, with full extracts showing the reasons upon which the rule contended for is based.

In the distribution of the estates of insolvents through trustees of all kinds, the rules for fixing the dividends to be allowed secured and unsecured creditors from the trust fund may be broadly ranged in four classes:

(1) The rule in bankruptcy, wherein the secured creditor receives dividends only on the excess over the securities held by him. States following this rule in distribution of estates of insolvents through trustees include: Georgia (Citizens' & Southern Bank v. Alexander, 147 Ga. 74, 92 S. E. 868, L. R. A. 1918B, 1021); Massachusetts (Amory v. Francis, 16 Mass. 308); Kansas (American National Bank v. Branch, 57 Kan. 27, 45 P. 88); Mississippi (Union & Planters' Bank v. Duncan, 84 Miss. 467, 36 So. 690, 2 Ann. Cas. 272); Washington (First National Bank v. Mansfield State Bank, 127 Wash. 475, 221 P. 595).

(2) The English chancery rule, wherein the secured creditor gets dividends on the full amount of his claim as of the date the trust fund comes into being, usually the appointment of a receiver or other trustee, and continues to draw dividends on the full amount until his entire debt is collected through securities and dividends, whereupon any remaining fund or equity in collaterals inures to the trust fund. Appellant claims under this rule. This is the federal rule followed in the liquidation of national banks and other insolvent corporations other than in bankruptcy; and also followed in several states, as appears from the following cases: Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Aldrich v. Chemical Nat'l Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611; Chemical Nat'l Bank v. Armstrong, 59 F. 372, 28 L. R. A. 231 (C. C. A. 6); U. S. F. & G. Co. v. Centropolis Bank, 17 F.(2d) 913, 53 A. L. R. 295 (C. C. A. 8); Washington-Alaska Bank v. Dexter Horton Nat'l Bank, 263 F. 304 (C. C. A. 9); (Connecticut) Findlay v. Hosmer, 2 Conn. 350; (Delaware) Mark v. American Brick Co., 10 Del. Ch. 58, 84 A. 887; (Kentucky) Hibler v. Davis, 13 Bush, 20; (Michigan) Third Nat'l Bank v. Haug, 82 Mich. 607, 47 N. W. 33, 11 L. R. A. 327; (New York) People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793, 8 L. R. A. 458; (North Carolina) Merchants' Nat'l Bank v. Flippen, 158 N. C. 334, 74 S. E. 100; (Oregon) Kellogg v. Miller, 22 Or. 406, 30 P. 229, 29 Am. St. Rep. 618; (Pennsylvania) Patten's Appeal, 45 Pa. 151, 84 Am. Dec. 479; Jamison & Co's Estate, 163 Pa. 143, 29 A. 1001; (Rhode Island) Allen v. Danielson, 15 R. I. 480, 8 A. 705; (West Virginia) Price v. Hosterman Lbr. Co., 70 W. Va. 12, 73 S. E. 55; and (Wisconsin) Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909.

(3) The Illinois rule, a modification of the above, fixing payment of dividends on the basis of the unpaid amount of the indebtedness on the date the claim is proven and presented. Levy v. Chicago National Bank, 158 Ill. 88, 42 N. E. 129, 30 L. R. A. 380; in Montana, State v. Yellowstone Valley Bank & Trust Co., 75 Mont. 43, 243 P. 813; and, in South Carolina, Wheat v. Dingle, 32 S. C. 473, 11 S. E. 394, 8 L. R. A. 375.

(4) The Maryland rule, wherein the dividend is based on the amount of the debt as of the date the dividend is declared and as reduced by collections on collaterals before that date. The following states follow this rule: Maryland: Third National Bank v. Lanahan, 66 Md. 461, 7 A. 615. Alabama: Philadelphia Warehouse Co. v. Anniston Pipe Works, 106 Ala. 357, 18 So. 43, 44. Arkansas: Jamison v. Adler-Goldman Commission Co., 59 Ark. 548, 28 S. W. 35. In Colorado: Erle v. Lane, 22 Colo. 273, 44 P. 591. In Iowa: Dolittle v. Smith, 104 Iowa, 403, 73 N. W. 867. In Missouri: In re McCune, 76 Mo. 200. In Nebraska: State v. Nebraska Savings Bank, 40 Neb. 342, 58 N. W. 976. In Ohio: State Nat'l Bank v. Esterly, 69 Ohio St. 24, 68 N. E. 582. In Indiana: Union Trust Co. v. Fletcher Savings & Trust Co., 194 Ind. 314, 142 N. E. 711.

Our own case of Philadelphia Warehouse Co. v. Anniston Pipe Works, supra, dealt directly with the priorities and distribution among creditors of the assets of an insolvent in the hands of a receiver. After reviewing the authorities, the decision proceeds: "On the other hand, the Maryland court, in the case of a general assignment by an insolvent debtor for the benefit of creditors, holds that the obligation of a trustee to pay a debt owing by the assignor does not depend on the state of the account between the creditor and the assignor at the time of the assignment, but at the time when payment is made; and that, where, at the time of the assignment, a debt of the assignor is secured by collaterals which are subsequently partly paid to the creditor before a dividend on the debtor's estate is made, such creditor is not entitled to a dividend on the full amount of the indebtedness, but only on that portion which remains, after deducting the moneys received of him from the collaterals placed in his hands to secure the debt. Third Nat. B. of Baltimore v. Lan-

ahan, Trustee, 66 Md. 461, 7 A. 615. This decision seems to us to be so simple, just, expeditious, and inexpensive, as to commend it for approval. * * * And this ruling fully accords with the views expressed by this court in the case of Gusdorf & Co. v. Ikelheimer & Co., 75 Ala. 153."

Appellant argues this case is no longer authority for the following reasons:

The English chancery rule, fully stated by Chief Justice Fuller in Merrill v. National Bank of Jacksonville, supra, following Mr. Justice Taft while on the Circuit Court of Appeals in Chemical National Bank v. Armstrong, 59 F. 372, 28 L. R. A. 231, rests upon the principle that the assets of the insolvent become a trust fund at the date insolvency is declared; that the beneficial ownership of the fund vests as of that date; that, the secured creditor having a right before insolvency to proceed against the debtor and his securities concurrently until his debt is satisfied, such status should remain and concurrent remedies be allowed against the trust fund and securities until full satisfaction, otherwise the creditor does not get the full benefit of his vigilance in taking security. Appellant reminds us that in the case of O'Bear Jewelry Co. v. Volfer & Co., 106 Ala. 205, 17 So. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31, decided at the same term as the Anniston Pipe Works Case, supra, this court repudiated the trust fund doctrine as applied to the assets of an insolvent corporation; that later the Legislature re-enacted such trust fund doctrine, overturning the O'Bear decision. Code, § 7062; Standard Chemical Co. v. Faircloth, 200 Ala. 657, 77 So. 31.

So, appellant argues, the logical result is to overturn the Maryland rule and adopt the English chancery rule in a case like this.

The O'Bear Jewelry Case dealt with the trust fund doctrine in connection with the right of an insolvent corporation, before a receivership, to make a preference among creditors.

We may note in passing that, beside re-enacting the trust fund doctrine, the succeeding Legislature further discountenanced preferences by declaring all dispositions by a debtor of his entire holdings in payment of or as security for debt shall operate as a general assignment. Code, § 8040.

▮▮ We cannot concur in the view that this course of legislation has any bearing upon the Anniston Pipe Works Case adopting the Maryland rule. That case dealt with a trust fund on the face of it. By all the authorities, here and elsewhere, assets of an insolvent corporation in the hands of a receiver constitute a trust fund. Without question creditors have vested rights in such funds. The sole inquiry is: What are the vested rights of the several creditors as between each other?

The Maryland rule says they should be determined with regard to the status of the fund and the several beneficiaries when such fund is ready for distribution. All agree that equitable principles should govern.

We will not further pursue the arguments for and against English chancery rule as compared with that heretofore approved by this court.

If it were an open question, we might favor the rule followed in the federal courts. But it is significant that in framing the Bankruptcy Law, one of far-reaching application in the distribution of the estates of insolvents, the national law makers chose to give the secured creditor a claim against the common estate only for the excess, unless he elects to turn his securities into the common fund.

Thus the right to share in the general or common estate in proportion to the debt incurred in reliance upon the credit of the debtor is made a national policy which has remained unchanged for forty years. The rule approved in this state is somewhat more liberal to the secured creditor.

We see no such inequity in it as calls for the overruling of our decision which has not been disturbed by legislation for thirty-five years.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.