[No. 607.   Decided December 9, 1892.]

*In the Matter of the Assignment of Charles F. Frasch:*

DEXTER HORTON & Co., *Bankers, Appellants*, v. SCHWABACHER BROS. & Co., AND LARAMIE MAYER, *Assignee, Respondents.*

APPEAL—FINAL ORDER—DISTRIBUTION OF FUNDS HELD BY ASSIGNEE—ASSIGNMENT FOR BENEFIT OF CREDITORS—RIGHT OF SECURED CREDITOR.

On an application for a partial distribution of the funds in the hands of the assignee of an insolvent debtor the court directed the assignee to pay dividends to all the creditors except plaintiff, which

held collateral security; that plaintiff be first required to exhaust its collateral security and apply the proceeds to the reduction of its debt, and that it thereafter be paid dividends upon the balance of its debts, which dividends should equal at the time of payment the rate of dividends paid to the other creditors up to that time, and that in the meantime the assignee retain sufficient funds in his hands to meet the requirements of said order. *Held,* That the order is final so far as it affects the plaintiff's rights to that portion of the proceeds of the estate which was distributed, and that an appeal will lie therefrom.

Where an assignment has been made for the benefit of creditors, a secured creditor is entitled to share *pro rata* with the unsecured creditors in the assets of the insolvent estate only upon the balance of his claim which remains after exhausting and applying the proceeds of his security to its diminution.

*Appeal from Superior Court, King County.*

*Blaine & DeVries,* for appellant.

*Preston, Carr & Preston,* for respondent.

The opinion of the court was delivered by

DUNBAR, J. — Charles F. Frasch assigned his property for the benefit of all his creditors, under the provisions of the act relating to estates of insolvent debtors, approved March 6, 1890 (Laws of 1889–90, pages 83 to 88, inclusive). The appellant, Dexter Horton & Co., bankers, presented their claim against the estate for $2,981.05. On an application for a partial distribution the respondent, Schwabacher Bros. & Co., who were also creditors of the assignor, objected to the participation of appellant in the partial distribution, for the reason that appellant's debts were secured, and upon the hearing the objection was sustained, and the court directed that the assignee make a partial distribution of the funds in his hands to all the creditors excepting appellant; that appellant be first required to exhaust the collateral security which it had; and after exhausting such securities and applying the proceeds thereof to the reduction of its debt, that it be paid dividends upon the balance of its debts,

which dividends should equal at the time of payment the rate of dividends paid to the other creditors up to that time, and that in the meantime the assignee retain sufficient funds of said estate in his hands to meet the requirements of said order.   This is the order appealed from, and the respondent interposes a motion to dismiss the appeal on the ground that it is not a final order or final judgment, and that, therefore, no appeal lies to this court.   We think this order is final so far as it affects the appellant's rights to that portion of the proceeds of the estate which was distributed, and that the case comes within the spirit of the ruling of this court in the case of the *State, ex rel. Schloss*, *v. Superior Court*, 3 Wash. 696 (29 Pac. Rep. 202), and the motion to dismiss the appeal is, therefore, denied.

On the merits of this controversy there is without doubt great conflict of authority, and while the record shows that there were some offers made by the appellant with reference to its securities, there was no offer made of unconditional surrender, and the question to be determined is, in the case of an assignment for the benefit of creditors, is a secured creditor entitled to share equally with unsecured creditors in any and all dividends and distribution of the estate on the whole amount of its claim?

In some of the states, notably Pennsylvania, Michigan and Connecticut, it is held that he is so entitled.   Some of the cases are insolvency cases and some probate cases, but they are all decided on the broad ground that, where the creditor has two funds of his debtor to which he can resort for payment, his position is not changed by reason of the assignment or death of his debtor; that, in assignment cases, he would have the right to proceed against either fund before the assignment, and that his rights are not abridged by the assignment.   In New York the decisions have been somewhat conflicting, *People v. Remington*, 121 N. Y. 328 (24 N. E. Rep. 793), sustaining appellant's

contention, while substantially the opposite view is maintained in *Besley v. Lawrence*, 11 Paige Ch. (N. Y.) 581. In Rhode Island, also, *Allen v. Danielson*, 15 R. I. 480 (8 Atl. Rep. 705), decides that the secured creditor has a right to an equal distribution of all the estate, especially overruling *Knowles, Petitioner*, 13 R. I. 90.

In *People v. Remington, supra*, which is one of the strongest cases supporting appellant's contention, the court, in commenting upon the rule laid down in Story's Equity Jurisprudence, § 633, that "the general principle is, that if one party has a lien on, or interest in, two funds for a debt, and another party has a lien on, or interest in, one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund," says that "the learned author's reason negatives the proposition that a secured creditor shall lose, or forego, any advantage which he may have by reason of his security, and through which the full satisfaction of his debt can be obtained." And we fully concur with that sentiment. But does he lose anything which was rightfully his by reason of his security, by compelling him first to exhaust his security and diminish his claim, before he is allowed to resort to the general fund? We think not. Under this theory of the law a secured creditor is given an undue advantage of the unsecured creditors. Instead of being deprived of any of the benefits of his security, he is allowed their benefit in full, and in addition is allowed to use the security as an instrument to operate on, and affect to his advantage the unsecured property.

In *National Bank v. Haug*, 82 Mich. 607 (47 N. W.

Rep. 33), Judge MORSE, in a dissenting opinion which we think is unanswerable, gives a practical illustration of the unjust effect of the doctrine maintained by the majority. Let us give a similar instance here. A assigns his estate, worth fifteen thousand dollars including security, in the hands of B, worth five thousand dollars. B has a claim against the estate of five thousand dollars, secured as mentioned above, and an unsecured claim of five thousand dollars. C has an unsecured claim of ten thousand dollars. Deducting the securities from the assets the estate has ten thousand dollars with which to pay claims aggregating twenty thousand dollars, and as a consequence pays fifty cents on the dollar. B is allowed a *pro rata* on his whole claim of ten thousand dollars, which gives him five thousand dollars; he then makes the other five thousand dollars out of his security, and in consequence has his whole debt paid in full. Thus on his unsecured debt of five thousand dollars he receives five thousand dollars, while C on his unsecured debt receives only five thousand dollars. It is not difficult to see that by some species of legerdemain in logic B has not only had the full benefit of his security, but that the security has reached beyond its legitimate purpose and original intention, and given him an undue advantage of an unsecured creditor with whom he stood on equal footing so far as their unsecured claims were concerned. In fact it has placed him in a different and more favorable position than he would have been if his secured debt had been paid in full immediately prior to the assignment.

Abstract theory should not be allowed to refute practical example, and it cannot be gainsaid that the practical effect of holding in favor of appellant's contention is as demonstrated above, which must be admitted to be an inequitable effect. The insolvency statute is intended to guarantee an equitable distribution. Sec. 8 of the act provides that the

assignee shall from time to time make full and equal dividends among the creditors of the assets in his hands in proportion to their claims. Not a dividend in proportion to their claims, simply, but a full and equal dividend. It is for this purpose that the assets are marshaled and placed under the control of the court, and if a creditor comes in to prove his claim he must come in upon equal footing with creditors of a like class.

As we have before said, if a creditor were allowed payment on his whole claim he would have greater advantages than the original security contemplated, for as was well said in *Amory v. Francis*, 16 Mass. 308, originally it would have been security only for a proportion of a debt equal to its value, whereas by proving the whole debt and holding the pledge for the balance it becomes a security for as much more than its value as is the dividend which may be received upon the whole debt.

We think that the plain and universally recognized principles of equity demand that the secured creditor must first exhaust his security, apply the proceeds to the diminution of his claim, and then share *pro rata* with other unsecured creditors on the balance of his claim. Such is the holding of the Iowa cases under a statute identical with ours. See *Wurtz v. Hart*, 13 Iowa, 515. Such, also, is the holding of the courts of South Carolina, Louisiana, Vermont, Maryland and Massachusetts, though most of the Massachusetts cases are decided on the strength of their peculiar statutes. This question not having been raised before in this state, and the authorities being conflicting, we feel at liberty to decide it in accordance with equitable principles, as we understand them, and therefore decide that the order of the court was not erroneous.

Judgment is affirmed.

ANDERS, C. J., and STILES and SCOTT, JJ., concur.

HOYT, J., not sitting, being disqualified.

## ON PETITION FOR RE-HEARING.

DUNBAR, C. J.—The petition for re-hearing in this case presents no new argument. That portion of the petition which indulges in flat contradictions of statements made by the court, and which is a greater exhibition of choler than of logic, can be of little assistance to the court in determining grave questions of law in a dispassionate and rational manner. Therefore we will not further notice it.

The petition is denied.

STILES, SCOTT and ANDERS, JJ., concur.

HOYT, J., not sitting.