[No. 18212.    Department One.    December 14, 1923.]

FIRST NATIONAL BANK OF SEATTLE, *Appellant,* v. MANSFIELD STATE BANK *et al., Respondents.*[1]

BANKS AND BANKING (7)—INSOLVENCY—RIGHTS OF CREDITORS— SECURED CLAIMS. A secured creditor of an insolvent bank is not entitled to an allowance of the claim in the full amount of the indebtedness without crediting either the collaterals or the collections made thereon after the closing of the bank.

Appeal from a judgment of the superior court for Douglas county, Hill, J., entered June 16, 1923, upon sustaining a demurrer to the complaint, dismissing an action to enforce a claim against an insolvent bank. Affirmed.

[1]Reported in 221 Pac. 595.

*Chadwick, McMicken, Ramsey & Rupp,* and *Maurice R. McMicken,* for appellant.

*D. E. Twitchell,* for respondents.

*Peters & Powell, Hamblen & Gilbert,* and *Grinstead, Laube & Laughlin, amici curiae.*

Holcomb, J.—When the insolvent state bank involved herein suspended payment, it was indebted to appellant upon a net indebtedness of $126,631.61, for a part of which, $30,000, it had collateral security aggregating $39,647.27, and at the time of suspension had on deposit with appellant the sum of $2,559.23. Appellant filed a claim with the banking department, liquidating the insolvent's estate, for the net sum of $126,631.61, not deducting any of the collateral or the proceeds thereof. The claim was rejected and appellant brought this suit.

The sole question involved is the right of appellant to have its claim allowed for the full amount of the indebtedness owing to it by the failed bank when closed, without crediting either its collaterals or collections made upon collaterals after the closing of the bank.

We are shown that there are four rules applied in different jurisdictions upon the question, one of which is the rule laid down by this court in *In re Frasch,* 5 Wash. 344, 31 Pac. 755, 32 Pac. 771. Another is the one appellant asks to be enforced in this state, and is what is called the "Chancery Rule," followed by the Federal courts, and leading up to the decision confirming that rule in *Merrill v. National Bank of Jacksonville,* 173 U. S. 131. The rule adopted in the *Frasch* case was boldly adopted by this court as then organized, admittedly against the weight of authority upon the question, but declaring that it was the just and reasonable rule to adopt. It was applied in a case

arising under the law relating to assignments of insolvent debtors for the benefit of creditors, Laws of 1889-90, pp. 83 to 88, inclusive. That rule is that, in insolvency, a secured creditor is entitled to share *pro rata* with unsecured creditors in the assets of the insolvent estate only upon the balance of its claim which remains after exhausting and applying the proceeds of his security to its diminution. The other rule, as followed in the *Merrill* case, *supra,* by the supreme court of the United States, is that a secured creditor of an insolvent bank may prove the face of his claim as it stood at the time of the declaration of insolvency, without crediting either his collaterals or collections made therefrom after such declaration, subject always to the condition that dividends must cease when from them and from collaterals realized the claim has been paid in full.

It is also contended by appellant that the rule of the *Frasch* case laid down in the matter of the assignment of an insolvent for the benefit of creditors, under an act which has been superseded by the bankruptcy laws of the United States, although never repealed by the local legislature, should not longer apply, but that this court should adopt the rule followed by the Federal courts, because our banking act has been made to conform, as nearly as possible, to the national banking act, and proceedings in regard to liquidation thereof should be in harmony with the Federal procedure relating to the liquidation of insolvent national banks.

*Hanson v. Soderberg,* 105 Wash. 255, 177 Pac. 827, is quoted and relied upon to the effect that our legislature, in enacting the state banking act of 1915, followed the national banking act, with the construction given thereto by the United States supreme court. That case dealt only with the liabilities of bank stockholders, the powers, discretion and conclusiveness thereof of

the state banking authorities over insolvent banks and their affairs, and the operation of like governmental machinery controlling such matters. It did not affect questions of substantive law as to the rights of different classes of creditors. The questions are wholly dissimilar.

An examination of the authorities shows that the rule which we followed in the *Frasch* case has been followed in Kansas, *Citizen's Bank of Mound City v. State*, 8 Kan. App. 468, 54 Pac. 510; in Maryland, *National Union Bank of Maryland v. National Mechanics' Bank*, 80 Md. 371, 30 Atl. 913; in Iowa, *Wurtz, Austin & McVeigh v. Hart*, 13 Iowa 515; in Massachusetts, *Merchants' National Bank v. Eastern Railroad Co.*, 124 Mass. 518; in New Jersey, *Whittaker v. Amwell National Bank*, 52 N. J. Eq. 400, 29 Atl. 203; in Tennessee, *First National Bank of Nashville v. Williamson*, 35 S. W. (Tenn.) 573; in Ohio by a *nisi prius* court, which seems to be authority in Ohio, *Searle v. Brumback*, 2 Ohio Dec. 653; in Mississippi, *Union & Planters' Bank of Memphis v. Duncan*, 84 Miss. 467, 36 South. 690; in New York, *Besley v. Lawrence*, 11 Paige (N. Y.) 581; in North Carolina, *Creecy v. Pearce*, 69 N. C. 67 (the last case is between creditors of a decedent); in Georgia, *Citizens' & Southern Bank v. Alexander*, 147 Ga. 74, 92 S. E. 868.

In the *Duncan* case, *supra*, the supreme court of Mississippi expressly refused to follow the *Merrill* case decided by the United States supreme court, but followed the dissenting opinion of Mr. Justice White, which was concurred in by Mr. Justice Harlan and Mr. Justice McKenna, the dissenting opinion asserting that there were several fallacies involved in the majority opinion; that it would operate unjustly and that it was wrong in principle. To show that it would

operate unjustly, Mr. Justice White used almost identically the same illustration of its operation as was used by the late Judge Dunbar in the *Frasch* case, which he took from a dissenting opinion of Judge Morse in *National Bank v. Haug,* 82 Mich. 607, as follows:

"A assigns his estate, worth fifteen thousand dollars including security, in the hands of B, worth five thousand dollars. B has a claim against the estate of five thousand dollars, secured as mentioned above, and an unsecured claim of five thousand dollars. C has an unsecured claim of ten thousand dollars. Deducting the securities from the assets the estate has ten thousand dollars with which to pay claims aggregating twenty thousand dollars, and as a consequence pays fifty cents on the dollar. B is allowed a *pro rata* on his whole claim of ten thousand dollars, which gives him five thousand dollars; he then makes the other five thousand dollars out of his security, and in consequence has his whole debt paid in full. Thus on his unsecured debt of five thousand dollars he receives five thousand dollars, while C on his unsecured debt receives only five thousand dollars. It is not difficult to see that by some species of legerdemain in logic B has not only had the full benefit of his security, but that the security has reached beyond its legitimate purpose and original intention, and given him an undue advantage of an unsecured creditor with whom he stood on equal footing so far as their unsecured claims were concerned. In fact it has placed him in a different and more favorable position than he would have been if his secured debt had been paid in full immediately prior to the assignment.

"Abstract theory should not be allowed to refute practical example, and it cannot be gainsaid that the practical effect of holding in favor of appellant's contention is as demonstrated above, which must be admitted to be an inequitable effect. The insolvency statute is intended to guarantee an equitable distribution."

Mr. Justice White, in his dissenting opinion referred to, uses different figures, but reaches the same result as in the foregoing quotation.

Appellant claims that the illustration used by Judge Dunbar "does not hold water," and, taken together with another illustration, attempts to show why. While examples might be conjectured *ad infinitum,* one against another, the illustration given by Judge Dunbar, and by the dissenting judge of the supreme court of Michigan, shows how it might work inequity, and in many cases will, and Mr. Justice White uses it for the same purpose, and we believe correctly.

What is attempted in this case is to get the decision in the *Frasch* case overruled, or denounced as no longer a precedent by reason of the subsequent banking laws. But the banking laws in force, enacted since the decision in the *Frasch* case, have evidently assumed that the *Frasch* case is authoritative, and have never attempted to change the rule. Therefore, creditors dealing with banks deal with them with the *Frasch* case as a precedent, and the decision in that case enters into their contracts the same as positive statutes do. Therefore, we ought not to depart from our own established practice and vary the nature of the contract between the debtor and creditor by adopting a rule which seems to us inequitable and which we are under no obligation to adopt. The same rules of law and justice should apply to any insolvent as to the rights of creditors, whether a corporation or a private person. Mr. Justice White points out that the decision in the *Merrill* case renders the law applying to national bank insolvencies inconsistent with the law applying to insolvencies generally under the bankruptcy law. We may presume that Congress manifested its dissatisfaction with the Chancery Rule by enacting the rules

governing such matters in the bankruptcy law. We think that, if we depart from the rule in the *Frasch* case, or declare it no longer of effect because of the banking code, it would create inconsistencies between the law applying to banking insolvencies and other insolvencies.

After due deliberation, therefore, we are content to reaffirm the decision in the *Frasch* case, rather than follow the Federal rule.

The judgment is affirmed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.