[No. 20330. Department One. July 30, 1927.]

FIDELITY NATIONAL BANK OF SPOKANE, *Plaintiff-Respondent,* v. MEDFORD R. FOX *et al., Defendant-Appellants,* TRI-STATE TERMINAL COMPANY *et al., Defendant-Respondents.*[1]

[1] TRUST (5)— WRITTEN AGREEMENTS — EXECUTION AND DELIVERY. The provision in a trust agreement that it shall not be binding unless all the property described is conveyed to the trustee is complied with, as to certain collateral, where the agreement expressly provided that the transfer should be by a certain assignment, which was done.

[2] SAME (12-1)—FAILURE OR DEFECT—DEFENSES. A creditor's trust agreement cannot be nullified because a certain creditor did not agree to forbear suit on certain notes, where, although there was no specific agreement for such forbearance, there was an actual forbearance.

[3] SAME (30)—MANAGEMENT OF TRUST—DILIGENCE. Diligence in enforcing collateral notes is sufficiently shown by testimony of officers in charge showing the usual efforts, and the very material reductions from the collections made.

[4] SAME (29)—AUTHORITY OF TRUSTEE—EXHAUSTION OF COLLATERAL. A creditor's agreement, providing that the trustee may foreclose for any sum "remaining owing" after December 31, 1922, does not require the exhaustion of collateral after that time, before suit to foreclose.

[5] BANKS AND BANKING (7)—INSOLVENCY—RIGHTS OF CREDITORS— SECURED CLAIMS. The rule in this state that banks could not present claims to the liquidator of an insolvent without first exhausting collateral or surrendering it to the liquidator, gives them a choice of remedies; and the fact that they filed no claims with the trustee does not relieve indemnitors of the insolvent

[1] Reported in 258 Pac. 335.

from their liability under a trust agreement, which provided that no action taken by any of the parties to the agreement shall relieve the indemnitors.

[6] INDEMNITY (5, 7-1) — CONSTRUCTION OF CONTRACT — EXTENT OF LIABILITY—DISCHARGE. The liability of an indemnitor of an insolvent is not affected by the fact that another indemnitor who was not a party to the trust agreement was not before the court, the question of contribution between the indemnitors not being at issue or involved.

[7] SAME (14) — ACTIONS ON CONTRACTS — JUDGMENT — DEFICIENCY JUDGMENT. Upon the foreclosure of pledges held under a trust agreement, in which there was a personal promise of indemnitors to pay the debts, it is proper to enter a deficiency judgment against them.

[8] HUSBAND AND WIFE (74, 94)—COMMUNITY DEBT—INDEMNITY LIABILITY. The husband's indemnity agreement, executed to protect stock in a bank which was community property, constitutes a community obligation, and can be enforced against the community property.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered July 16, 1926, upon findings in favor of the plaintiff, in an action upon a contract of indemnity. Affirmed.

*Chas. W. Johnson,* for appellants.

*Hamblen & Gilbert, Kimball & Blake, Williams & Cornelius,* and *Kerr, McCord & Ivey,* for respondents.

FULLERTON, J.—On and prior to November 8, 1921, the Farmers State Bank of Connell, called hereinafter the bank, was a banking corporation, doing a general banking business at the town of Connell, in Franklin county, in this state. The bank, while a going concern, desired to become a depositary of state and county funds. The statutes of the state provide that, before any bank may become such a depositary, it shall execute a bond, with sufficient sureties, to the municipality of whose funds it desires to become a depositary, conditioned for the repayment of the funds deposited. The bank, in compliance with this requirement, executed to

the state of Washington a bond in the sum of $2,500, on which the respondent London & Lancashire Indemnity Company of America was surety; a bond to Franklin county in the sum of $3,750, on which the same company was surety; a bond to the state of Washington in the sum of $5,000, on which the respondent Fidelity & Deposit Company of Maryland was surety; and a bond to Franklin county, in the sum of $5,000, on which the respondent the Maryland Casualty Company was surety.

At the time of the execution of the bonds, the appellant M. R. Fox was a stockholder in, and a trustee of, the bank, and, as a consideration for the execution of the bonds, he, with others of the trustees and persons interested in the bank, executed bonds of indemnity to the several bonding companies named, whereby he, with the others mentioned, agreed to indemnify the companies against any loss they should sustain by reason of the execution of the bonds.

The bank also found it desirable to establish lines of credit with other banking institutions, and did establish one such line with the respondents Fidelity National Bank of Spokane, and another with the respondent First National Bank of Seattle. To secure these banks for such moneys as they should advance by reason of the line of credit established, Fox and his co-trustees executed to each of them severally a bond, whereby he and they severally agreed to indemnify it against any loss it should sustain by reason of the advancements.

The bank was also indebted to the respondent Tri-State Terminal Company, on four promissory notes, of $3,000 each, which notes the appellant M. R. Fox, had in part signed as maker and in part endorsed. These notes the Tri-State Terminal Company endorsed

to the respondent Bank of California, National Association.

The bank closed its doors, suspended business, and was taken over by the state supervisor of banking for liquidation, on November 7, 1921. At the time of the failure of the bank, the state and the county of Franklin had large sums of money on deposit with the banks, and the bonding companies mentioned immediately paid these sums, up to the amount of their obligations, into the respective treasuries of the municipalities, and relied for recompense on the indemnity bonds of the appellant Fox and the others executing the indemnity bonds. The bank at this time, was also indebted to the respondent Fidelity National Bank of Spokane, for advancements made in a sum approximating $45,000, and to the respondent First National Bank of Seattle, in a sum approximating $26,000, and the notes executed to the Tri-State Terminal Company were unpaid and outstanding. The Spokane bank and the Seattle bank then held, as collateral security for their advancements, negotiable notes of the bank of the approximate face value of their advancements, which it was believed were in a large part collectible, and would materially reduce the obligations. The resources retained by the bank itself seem to have been but of little more than nominal value.

At the time of the failure of the bank, the indemnitors of its obligations had property of considerable value, and it was realized by them that the resources of the bank would be insufficient to meet the obligations for which they stood as sponsors, and that they would be called upon to make up a large deficiency. It was realized, also, by the holders of the indemnified obligations that it was to their interests to husband the resources to which they had resort for the payment of their claims, and it was the desire of all the parties that

these resources be not wasted in litigation or sacrificed at forced sales. To this end, the parties met and consulted together as to the best means of accomplishing their desires. On January 6, 1922, these meetings resulted in a written agreement, in which all of the parties joined.

The agreement is minute in its details. In substance, it was therein provided that the indemnitors should convey in trust to the respondent, Fidelity National Bank of Spokane, certain specifically described real property; that the creditors of the Farmers State Bank of Connell, other than the respondent The First National Bank of Seattle, should assign and transfer to the trustee such of the obligations of the bank as they held as collateral; that all of the creditors should forbear action upon their claims until December 31, 1922; that, in the meantime, a diligent effort should be made to collect on the collateral of the bank; that the trustee bank and the First National Bank of Seattle should apply the proceeds of the collateral held by them severally upon their own indebtedness; that for the remaining indebtedness, the property conveyed to the trustee bank should be sold and the proceeds of the sales divided *pro rata* between all of the creditors. The contract contained these specific provisions, namely:

"It is hereby agreed that all of said conveyances and transfers shall be executed and delivered simultaneously with the delivery of this agreement in such a manner as to legally effect transfer and conveyance of all of said properties to said Fidelity National Bank of Spokane as hereinbefore set forth, and that otherwise this agreement shall not be binding or effective between the parties hereto.

"It is further understood and agreed that, in the event there is any sum or sums remaining owing from the parties of the first part herein, or any of them, to the creditors hereinabove referred to, or any of them, on December 31, 1922, then the party of the second part

herein shall have the right to immediately institute appropriate proceedings and sell any or all of the properties conveyed to it pursuant to the terms of this agreement, except as herein provided, and apply the proceeds derived therefrom in payment of any and all sums so remaining owing, together with all costs and expenses incident to such proceedings.

"Such proceedings shall be without prejudice to the rights of the banks and surety companies to proceed against their indemnitors or guarantors for any balance remaining due.

"It is understood and agreed that the party of the second part [the trustee] shall not be called upon to make any adjustment of claims for contribution between the said first parties.

"In the event any of the parties of the first part [the indemnitors] shall be compelled to pay more than his pro rata share of all indebtedness secured by this agreement, then it is understood and agreed that such party shall, to the extent that he has paid more than his pro rata share of such indebtedness, be subrogated to the rights of the creditors hereunder.

"It is contemplated between the parties hereto that simultaneously with the delivery of this agreement, a valid and binding written agreement shall be secured from the holders of all of said notes aggregating $12,000 so given to said Tri-State Terminal Company as hereinbefore set forth and they and each of them will forbear the bringing of any action or commencement of any proceedings against the makers of said notes or any of them until after December 31, 1922, and unless such agreement shall be secured and delivered to the second party, then this agreement shall not be binding or effective upon the parties hereto."

Following the execution of the agreement, the property therein described was conveyed to the trustee bank. In this action, the trustee named in the agreement sought to foreclose upon the property so conveyed to it. In its complaint, it made parties defendant all of the creditors and indemnitors executing and taking part in the agreement. It set out the balance of

the indebtedness due to it, alleged that it was not advised as to the balances due others of the creditors, and prayed that they be required to set out the amount of their indebtedness; that the total indebtedness be ascertained by the court, that the property be sold, and that the proceeds of the sale be divided *pro rata* between them. All of the creditors participating in the agreement answered by setting up the amounts severally due them and praying that the trust property be sold and the proceeds divided according to the prayer of the complaint. All of the indemnitors, except Fox and wife, defaulted. Fox and wife took issue upon the complaint and the several answers denying, in effect, liability thereon. A trial was had, resulting in a judgment in accordance with the prayer of the complaint, and the several answers of the creditors, and directing a sale of the property conveyed in trust. From this judgment, Fox and wife appeal.

[1] The appellants first contend that the trust agreement was never consummated. This contention has its foundation in the first of the special clauses of the agreement quoted, wherein it is provided that the agreement shall not be binding unless all of the property described is conveyed to the trustee; the particular claim being that all of such property was not so conveyed. But our study of the evidence convinces us that there was a compliance with the agreement in this respect. The principal complaint is with respect to collateral held by the Tri-State Terminal Company, which it had assigned to the Bank of California, National Association. But the agreement provided specifically how this transfer was to be made; it provided that the transfer should be made by an order upon the California bank by the Tri-State company, and such an order was delivered. The Tri-State company, it is true, assigned a large block of valuable property to the

California bank which was not included in the order. But we do not gather from the agreement that it was intended to be included therein. It was never the property of the insolvent bank, and it was only its property that was within the contemplation of the agreement.

[2] It is next urged, in this connection, that there was no agreement obtained to forbear suit upon the four notes of $3,000 each, hereinbefore mentioned. But here again we think the evidence is against the appellants. But it is not of much concern now, whether or not there was a specific agreement to forbear suit on them. The holder of the notes did so forbear, not only for the period mentioned in the agreement, but for nearly two years thereafter. In fact, it never at any time began an independent action on the notes; it sought to recover on them for the first time in its answer to the complaint in the present action. The appellants have thus had the benefit of forbearance, and were no specific agreement to forbear shown, they will not be heard to assert it for the purpose of nullifying the agreement.

[3] It is next contended that the evidence fails to show that the banks holding the collateral notes exercised reasonable diligence in an effort to collect them. But we think the evidence sufficient in this regard also. The officers of the banks having the collections in charge testified not only generally to such an effort, but went into detail as to the methods pursued. These were such as diligent collectors of like obligations usually employ. But if nothing more had been shown, the very material reductions made from the collections on the obligations due them would evidence their diligence.

[4] The next assignment is that the action to foreclose is premature. It is claimed that the creditors were bound to exhaust the collateral before they were

entitled to foreclose on the property conveyed to the trustee. But this claim mistakes the terms of the agreement. That instrument provides that, in the event there is any sum "remaining owing" to the creditors after December 31, 1922, the trustee shall have the right to institute appropriate proceedings "to sell all or any of the properties conveyed to it pursuant to the terms of this agreement." The agreement to forbear proceedings was limited by time only; there was no provision to forbear until the collateral held by the banks should be exhausted.

[5] The banks holding the collateral security presented no claim to the liquidator of the insolvent bank for the indebtedness due them from the bank. The appellants contend that this operated to relieve them from their obligations as indemnitors of the indebtedness of the bank, and, in consequence, from their liability under the trust agreement. This claim is untenable. Under the rule in this state, the banks could not present such a claim without first exhausting the collateral, or surrendering it to the liquidator at the time of the presentation of the claim. *In re Frasch,* 5 Wash. 344, 31 Pac. 755, 32 Pac. 771; *First National Bank of Seattle v. Mansfield State Bank,* 127 Wash. 475, 221 Pac. 595. They thus had a choice of remedies, and under no rule of law could the choice made relieve the appellants of their obligation. Nor were the appellants injured thereby. For any obligation of the bank they were compelled to pay, or for which they had obligated themselves to pay, they could themselves present a claim to the liquidator, and share in the assets of the bank to the extent thereof. Furthermore, the agreement itself provides that no action taken by any of the parties to the agreement, looking to the enforcement of their claims against the insolvent bank, shall operate as a release of the indemnitors. This, it

is true, speaks of action rather than non-action, but its evident purpose and intent were to provide against any claim of waiver based upon the action of the creditors with reference to the bank, be that action an attempt to collect from the bank, or a failure to make such an attempt.

[6] One C. W. Nelson was an indemnitor on certain of the claims of the creditors. He was brought into the action by them, but was dismissed on his motion because not a party to the trust agreement. This is assigned by the appellants as error, the argument being that, as against him, they were entitled to contribution. But the question of contribution as between the indemnitors was not presented by the issues, nor could it have been so presented in this proceeding. Which of them has paid, or will pay, the greater part of the indebtedness has not been determined, and cannot be until the payment in full of the obligations indemnified. These payments have not as yet been made.

[7] The decree provides for a deficiency judgment against the indemnitors, and it is objected that this is unwarranted; the argument being that there should have been nothing more than a foreclosure of the pledged property described in the trust agreement. But there was here both a personal promise to pay the debts as well as a pledge of property for that purpose. The situation is akin to that of an ordinary mortgage given upon property to secure a debt for which a personal promise to pay is given. In a proceeding to foreclose the mortgage, a deficiency judgment is uniformly allowed, and no reason exists why the same rule is not here applicable.

[8] The wife of Fox did not join in the indemnity agreements, but did join with her husband in the execution of the trust agreement. The decree provides for

a deficiency judgment against Fox and the community composed of Fox and his wife, and this may be executed upon community property. It is contended that this was error; the argument being that the indemnity agreement did not create a community debt. But the evidence shows without substantial dispute that the stock in the bank, which the indemnity agreements were executed to protect, was community property, and it follows, under the rule which we have uniformly applied, that any obligation created by the husband to protect it is a community obligation. As such, it can be collected from community property.

Finally, it is contended that it was error to allow attorney's fees; but the record shows that none such were allowed, except in instances where there was a specific agreement to pay them.

The decree is affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FRENCH, JJ., concur.