[No. 23064. Department Two. September 8, 1931.]

SAM ADAMS, *as Receiver of the Woodland Lumber Company, Plaintiff,* v. VANCOUVER NATIONAL BANK, *Respondent,* W. W. McCREDIE *et al., Appellants.*[1]

[1]Reported in 2 P. (2d) 684.

*McCredie & Peterson* and *J. E. Stone,* for appellants.

*McMaster, Hall & Schaefer,* for respondent.

FULLERTON, J.—On and prior to May 20, 1926, the Woodland Lumber Company was a corporation organized under the laws of the state of Washington, and was doing business therein. The corporation desired to borrow money. To give it a credit with the respondent, Vancouver National Bank, the appellants McCredie, the appellant Harvey, and the appellant Erickson, executed and delivered to the respondent an instrument in writing, in words and figures as follows:

"For and in consideration of loans being made by the Vancouver National Bank at Vancouver, Washington, to the Woodland Lumber Company of Woodland, Washington, from time to time, we, the undersigned, jointly and severally guarantee the payment of all notes and obligations of the Woodland Lumber Company to the Vancouver National Bank not exceeding an aggregate of $15,000 in principal and consent to any and all renewal thereof from time to time and waive protest, demand and notice of non-payment in each and every loan, and in case of suit agree to pay all costs including such attorney's fees as the court may adjudge reasonable and all unpaid interest in excess of $15,000 principal."

Between the time of the execution and delivery of the instrument and August 8, 1927, the respondent made loans to the Woodland Lumber Company in large sums. These were in part repaid, so that on April 18, 1928, the lumber company was indebted to the respondent, according to the terms of the loans, in

the sum of $16,128.33 as principal and $1,024.58 as interest.

On the date last given, the Woodland Lumber Company was adjudged by the superior court of Cowlitz county to be insolvent, and a receiver in the person of the plaintiff, Sam Adams, was appointed to wind up its affairs. The receiver performed the obligations of his trust. He converted the assets of the lumber company into money, and found, when he had done so, that there were sufficient funds to pay a dividend of about eight per cent to the general creditors of the lumber company.

In due time after the appointment of the receiver, the respondent bank filed its claim with the receiver for the indebtedness of the lumber company to it, and the claim was allowed by the receiver for the full amount claimed. The dividend thereon amounted to $1,403.89.

The appellants made no payment to the respondent on the indebtedness due it from the lumber company, but one of them, on behalf of all, presented a claim to the receiver because of their contingent liability. The receiver thereupon refused to pay over the money either to the respondent or to the appellants, and began the present action in the superior court in which the insolvency proceedings were pending, making the respondent and the appellants parties defendant thereto. In his complaint in the action, he disclaimed any interest in the amount of the dividend, and alleged that the ''defendants claim to be the owners of, entitled to, interested in, or to have a lien on said money or part thereof, but cannot agree.'' Upon filing the complaint, he paid the money into the registry of the court, and asked that the court determine to whom it rightfully belonged.

The respondent on the one part and the appellants on the other severally filed answers to the complaint.

In its answer, the respondent claimed the money by reason of the fact that it was a creditor of the insolvent corporation, and that the sum had been allowed it as a dividend upon the indebtedness of the corporation to it. The appellants answered jointly. In their answer, they set forth the most of the facts we have hereinbefore recited. In addition, they alleged that the respondent had instituted actions against them in the trial courts of both the state of Washington and the state of Oregon on the guarantee above set out, and had in each state attached property belonging to certain of the appellants sufficient in value to satisfy any judgment or judgments that might be obtained against them, and that these actions were pending and undetermined. They further alleged:

"That whatever judgment the said bank finally obtains in said suits and satisfies out of the said property under attachment, the ones whose property is sold is entitled to an equitable claim against said money turned into court proportionately as a general creditor or creditors of the Woodland Lumber Co. Otherwise defendants do not have any remedy at law, complete, adequate, speedy or otherwise, and will thereby be compelled to sustain a loss of any equitable distribution of the assets of an insolvent corporation."

The prayer of the answer was as follows:

"WHEREFORE, defendants lacking any complete, speedy or adequate remedy at law, pray this court that an order issue herefrom, touching the funds of the Woodland Lumber Co. deposited in this court, requiring that the defendants or any of them, who may by force of judgment or otherwise pay to the Vancouver National Bank any indebtedness of the Woodland Lumber Co. found and adjudged by the actions or suits instituted by the bank, may be repaid. That the defendant sureties be given the regular dividend to which they are entitled, for paying any obligation of the Woodland Lumber Co. and that the defendants given judgment against the Vancouver National Bank

for their costs and disbursements incurred herein, and such other and further relief as this court may in good conscience deem meet and equitable.''

The respondent did not traverse the allegations of the answer, and the cause was submitted to the court on the facts as shown. At the hearing on the facts, the trial court ruled that the money paid into the registry of the court by the receiver rightfully belonged to the respondent, and entered an order directing the clerk of the court to pay the money over to it. From this order, the appeal is prosecuted.

The appellants' first contention is that the respondent is not entitled to the fund ordered paid to it, whatever may be the appellants' interest therein. In support of the contention, they call attention to the rule announced by us in the cases of *In re Frasch,* 5 Wash. 344, 31 Pac. 755, 32 Pac. 771, and *First National Bank v. Mansfield State Bank,* 127 Wash. 475, 221 Pac. 595, to the effect that a creditor of an insolvent corporation, holding securities for the payment of his claim, must first exhaust his securities and apply the proceeds to the satisfaction of the obligation due him before he will be permitted to share with the general creditors in the assets of the corporation, and seek to apply the rule to the situation of the respondent in the present instance.

But we think the appellants mistake the purport of the rule. In the cited cases, the securities held in pledge by the creditors were properties which belonged to the insolvent corporations, and which would, but for the pledge, have been assets belonging to the insolvent corporations for distribution to their general creditors. In this instance, the respondent holds no property of the insolvent corporation. The security it holds is the promise of third parties to pay the debt of the corporation, in the case the corporation does not pay it. In

no sense is the promise property of the insolvent corporation which can inure to the benefit of its general creditors. Whether the principal debtor makes the claim, or whether he relies on the promise of the sureties, the effect on the general creditors is the same. In either event, the estate of the insolvent remains liable for the debt, and the only effect of a payment by the sureties would be to work a change of creditors. If the sureties pay, they may claim the obligation under the doctrine of subrogation. It must follow that the rule invoked is not a bar to the right of the respondent to receive the proportionate share of the assets of the insolvent allotted to the payment of its claim.

The appellants' further contention, if we have correctly gathered it, is that they have a contingent interest in the dividend fund, and therefore have the right to have the fund retained by the court until it is determined whether or not the contingent liability becomes absolute; contending further that, if it be determined that the liability is absolute, they will be entitled on its payment to a proportionate share of the fund.

But, conceding these contentions to be sound, we think the respondent is entitled to receive now the fund in court. The actions brought by the respondent against the appellants on the guarantee are still pending, and the questions above suggested can be determined in one or the other of those actions. If the appellants are successful in resisting liability, then, of course, the entire fund will go to the respondent. If, on the other hand, the respondent is successful, the trial court, in fixing the amount of the recovery, can make an allowance in the judgment rendered for such share in the fund as the appellants will be found entitled to.

In our opinion, there was no error in the order of the trial court, and it will stand affirmed.

TOLMAN, C. J., BEELER, and PARKER, JJ., concur.

BEALS, J. (dissenting)—In my opinion, appellants are entitled to have the fund in question retained in the custody of the court until the matters in litigation between the parties are finally adjusted by payment, or the entry of judgments upon which the dividend can be credited, or a determination that appellants are not liable. I therefore dissent from the conclusion reached by the majority upon the last question discussed in the foregoing opinion.

